Robert A. Loefflad, Esquire
NJ Bar ID# 024791996
KING BARNES, LLC
2600 New Road, Suite A
Northfield, NJ 08225
Tel: 609-522-7530
Fax: 609-522-7532
Email: rloefflad@king-barnes.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>ROBERT ALLAN FORESTER<br><br>Debtor. | CHAPTER 13<br><br>Case No. 22-19923<br><br>Judge: Hon. Jerrold N. Poslusny, Jr., USBJ |

### BRIEF IN RESPONSE TO OBJECTION TO CLAIM OF EXEMPTIONS

This brief is being submitted in support of confirmation of the Debtor's modified Chapter 13 Plan and in response to the objection to the Debtor's claim of exemptions which the Debtor seeks to apply against the post-petition sale proceeds resulting from the sale of his principal residence. The issue in this case is whether the exemption amounts allowed under 11 U.S.C. § 522 as applied to the *post-petition* increase in value of the debtor's principal residence are limited to the amounts allowable at the time of filing or whether the debtor may apply the exemption amounts allowable at the time of sale.

### Statement of Facts

1.     On December 16, 2022, The Debtor, Robert Allan Forester ("Forester") filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code.

2.  At the time of filing, Forester and his non-debtor spouse, Ginamarie Forester, were the sole owners of a single-family home located at 7 Ruth Court, Absecon, New Jersey 08201 (the "Absecon Residence"), which they occupied as their principal residence.

3.  At the time of filing, the Absecon Residence had an estimated value of $454,000.00 and was subject to a mortgage loan obligation with a balance of $351,535.99 (Claim No. 3) and outstanding real estate taxes of $5,612.23 (Claim No. 8).

4.  I am attaching a copy of an appraisal of the Absecon Residence dated September 16, 2022, which was performed by the mortgage lender and which the Debtor relied on in estimating the value of the Absecon Residence as of the date of the bankruptcy filing. See **Exhibit "A."**

5.  At the time of filing, the following equity analysis applied to fully exempt Forester's ownership interest in the Absecon Residence:

| | |
|---|---|
| Fair Market Value | $ 454,000.00 |
| Principal Mortgage | ($ 351,535.99) |
| Outstanding Real Estate Taxes | ($ 5,612.23) |
| Estimated Costs of Sale | ($ 45,400.00) |
| Net Equity | $ 51,451.78 |
| Debtor's ½ Ownership Interest | $ 25,725.89 |
| 11 USC 522(d)(1) Exemption | $ 25,725.89[1] |

6.  To be clear, at the time of Forester's bankruptcy filing, his ownership interest in the Absecon Residence was fully exempt.

7.  Forester's Chapter 13 Plan provided that Property of the Estate would vest with the Debtor upon confirmation of the Plan.

8.  There were no objections filed to Forester's Chapter 13 Plan or claim of exemptions.

---

[1] At the time of the Debtor's bankruptcy filing on December 16, 2022, the homestead exemption under 11 U.S.C. 522(d)(1) was $27,900.00.

9. On April 3, 2024, the court conducted a confirmation hearing. At that time, Forester's Chapter 13 Plan was recommended for confirmation.

10. On April 4, 2024, the trustee submitted and the court executed a confirmation order. See **Document No. 31.**

11. Even though the Chapter 13 Trustee did not object to Forester's Chapter 13 Plan and did not object to Forester's election that property of the estate would vest with the Debtor upon confirmation, the confirmation order stated, "any post-confirmation appreciation in the estate of the debtor be used for the benefit of the unsecured creditors."

12. The language added by the Trustee's office materially changed the terms of Forester's plan by treating property of the estate as if it did not vest with the Debtor upon confirmation.

13. It was wrong and improper for the Chapter 13 Standing Trustee to unilaterally change the terms of Forester's bankruptcy plan without objecting to the plan or otherwise notifying the Debtor prior to confirmation.

14. Forester is employed as a mortgage loan officer and his income is commission based. Accordingly, his income can fluctuate wildly from year to year.

15. As a result of the unpredictability of his income, Forester struggled to maintain his trustee payments and other financial obligations.

16. Additionally, by late 2025, Forester's formerly dependent daughters had completed their schooling and were now living independently.

17. Based on these facts, in late 2025, Forester and his wife elected to sell the Absecon Residence.

18.   On or about November 16, 2025, Forester and his wife entered into a Contract of Sale to sell the Absecon Residence for the sum of $560,000.00.  See **Exhibit "B."**

19.   On December 4, 2025, the court entered an Order approving the sale of the Absecon Residence pursuant to the Contract of Sale.  See **Document No. 46**.

20.   On December 5, 2025, Forester and his wife consummated the sale of the Absecon Residence.  See **Exhibit "C."**

21.   The sale resulted in total net sale proceeds of $161,542.88.  See **Exhibit "C."**

22.   From the net sale proceeds, $80,771.44 was paid to Forester's wife representing her one-half ownership interest in the Absecon Residence, $21,525.00 was paid to Forester for his homestead exemption, and $59,246.44 was paid to the Chapter 13 Standing Trustee.   See **Exhibit "C."**

23.   The trustee asserts that Forester is limited to the exemption amounts applicable at the time of his case filing for his share of the sale proceeds.

24.   At the time of Forester's bankruptcy filing, the unused portion of his homestead exemption was $6,375.00 and the unused portion of his wildcard exemption was $668.00, for a total of $7,043.00.

25.   Forester maintains he should be able to claim the exemption amounts applicable at the time of sale.

26.   If the exemption amounts applicable at the time of sale are applied to Forester's share of the sale proceeds from the Absecon Residence, the unused portion of his homestead exemption would be $10,050.00 and the unused portion of his wildcard exemption would be $868.00, for a total of $10,918.00.

27.    So, at a minimum, Forester should receive a refund from the trustee of $7,045.00 based on the 2022 exemption amounts; but, Forester maintains he should actually receive a refund of $10,918.00 based on the date of sale exemption amounts.

28.    Forester believes the exemption amounts in effect on the date of sale should apply because his ownership interest in the Absecon Residence was fully exempt at the time of filing; and the unexempt value at the time of sale was entirely attributable to the **post-petition** increase in value of the home.

<u>Legal Argument</u>

**POINT I: THERE IS AUTHORITY TO SUGGEST THAT PROPERTY OF THE ESTATE DOES NOT INCLUDE POST-PETITION APPRECIATION IN VALUE. ACCORDINGLY, SINCE FORESTER'S OWNERSHIP INTEREST IN THE ABSECON RESIDENCE WAS FULLY EXEMPT AT THE TIME OF FILING, ALL OF THE SALE PROCEEDS BELONG TO THE DEBTOR AND NOT TO THE BANKRUPTCY ESTATE.**

There is a wide disparity of opinions regarding whether the appreciation in value of an asset during the course of a chapter 13 bankruptcy plan constitutes property of the estate and whether such appreciation in value belongs to the debtor or the bankruptcy estate in the event of a sale of the property during the term of the chapter 13 bankruptcy plan.

There does not appear to be any controlling authority in the Third Circuit or among the district courts of the State of New Jersey on this issue. See <u>In re Larzelere</u>, 633 B.R. 677 (Bank. N.J. 2021)(Observing as to whether post-petition appreciation belongs to the Debtor or to the bankruptcy estate, "[s]everal theories abound, but there is no binding precedent on this court."). However, in <u>Larzelere</u>, Judge Altenburg set forth a detailed analysis of the issue and concluded such post-petition appreciation in value of an asset belongs to the Debtor and does not constitute property of the estate. <u>Id.</u> at 678, 683.

The facts of the Larzelere case closely mirror the facts of the present case.  In Larzelere, at the commencement of his case, the Debtor owned certain real property.  Id. at 679.  During the course of the Debtor's plan, the real property increased in value by $129,000.00.  Id. After completing approximately 3 ½ years of his plan, the Debtor filed a motion to sell the real property.  Id.  In his motion, the Debtor sought to declare the entirety of the appreciation in value to constitute his separate property and not property of the estate subject to distribution to creditors.  Id.

In Larzelere, the Debtor and Trustee framed the dispute as a vesting issue requiring reconciliation of various, disparate provisions of the bankruptcy code.  Id.  On the one hand, 11 U.S.C. § 1306(a) states property of the estate includes all property "the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7, 11, or 12 of this title. . . ."  On the other hand, 11 U.S.C. § 1327(b) provides "[e]xcept as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property in the debtor* . . . " (Emphasis added); and, 11 U.S.C. § 1327(c) states, "the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan."

In reconciling these apparently, contradictory provisions of the bankruptcy code, Judge Altenburg observed that courts have adopted four different approaches:

- **Estate Preservation:** Under this approach, the language vesting property of the estate with the Debtor upon confirmation only recognizes the Debtor's right to use and possess the property; but, the vesting language does not limit what property may become property of the estate during the course of the plan, including appreciation in value of assets.  Id. at 681.  Judge Altenburg

-6-

**rejects** this approach as "putting all its weight on section 1306(a) while ignoring section 1327(b) 'largely . . . as mere surplusage.'" Id.

- **Estate Termination:** This approach states the bankruptcy estate terminates upon confirmation and "all property of the estate, whether acquired before or after confirmation, becomes property of the debtor." Judge Altenburg **rejects** this approach as rendering § 1306(a) "toothless."

- **Estate Transformation:** This approach states that upon confirmation all property of the estate becomes property of the debtor except property essential to the debtor's performance of the plan.   Judge Altenburg **rejects** this approach as it creates a legal framework which does not derive from any language in the bankruptcy code; and, it creates an amorphous standard as to what post-petition property should be considered "essential to the debtor's performance of the plan." Id. at 682-83 (Rejecting the estate transformation approach because it "'reads nonexistent language into the statute . . . .'" and because "'it is not clear exactly what becomes property of the estate under this formulation, because debtors, creditors, and the court may differ on exactly which property is 'necessary' to make plan payments.'").

- **Estate Replenishment:** This approach states that property existing at the time of filing becomes the Debtor's property at confirmation, including post-petition appreciation in the value of such property; but, new property acquired by the Debtor post-petition, such as inheritances, lottery winnings, etc., would become property of the estate and would be subject to distribution to creditors. Id. at 681.  Judge Altenburg recognizes the estate replenishment approach as

being the growing majority opinion on the issue and adopts it as being the best approach to harmonize Sections 1306(a) and 1327(b), (c) of the Bankruptcy Code.

In adopting the estate replenishment approach, Judge Altenburg commented, "[a]pplying the estate replenishment approach to the facts at hand, the court decides that the appreciation in the Wenonah Property is not property of the estate after it vested at confirmation. Appreciation cannot be separated from the underlying real estate . . . Appreciation, itself, therefore, cannot be and is not a separate asset." Id. at 683. Judge Altenburg further explained, "all property of the estate as of confirmation vests in the debtor, the estate replenishes after confirmation with new property of the estate, **but that replenishment does not include appreciation in assets that vested at confirmation.**" Id. at 678.

Admittedly, in Larzalere, Judge Altenburg recognizes the replenishment approach may be superseded by language in the confirmation order. Id. at 680 ("Section 1327(b) provides that **'[e]xcept as otherwise provided in a confirmed plan or order confirming a plan**, the debtor shall remain in possession of all property of the estate.'" In the present case, Forester's Plan clearly and explicitly stated property of the estate would vest in the Debtor at confirmation. No objections to the Plan, or its vesting provision, were filed by the Trustee or any creditors.

At the confirmation hearing, the Trustee recommended confirmation of Forester's Plan without qualification. Thereafter, the Trustee submitted an Order with language stating, "ORDERED that any post-confirmation appreciation in the estate of the debtor be used for the benefit of the unsecured creditors." This language materially changes the terms of Forester's Plan. If the Trustee wanted to include this language in the confirmation order, the Trustee should

have objected to Forester's Plan so the Debtor would have an opportunity to be heard on the objection.

Based on the above, the Debtor is under no legal obligation to surrender **any** of the net sale proceeds from the sale of the Absecon home to the Chapter 13 Trustee.  Nevertheless, the Debtor has voluntarily chosen to apply a portion of the sale proceeds to his plan so long as he is permitted to claim the full exemption amounts in effect at the time of sale.

**POINT II:  THE AMOUNT OF THE EXEMPTION APPLICABLE TO A POST-PETITION ASSET IS SET AS OF THE DATE SUCH PROPERTY BECOMES PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 552(a)(2).**

The principal issue at hand in this case is whether an exemption applicable to a post-petition asset in a Chapter 13 bankruptcy case is limited to the amounts allowable at the time of case filing or whether the Debtor may claim the amounts allowable at the time the asset becomes property of the estate.  The Bankruptcy Code implicitly answers this question.

11 U.S.C. 522(a) defines value as the "fair market value as of the date of the filing of the petition **or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate."** (Emphasis added). Thereafter, Section 522(d) states, in relevant part, "[t]he following property may be exempted under subsection (b)(2) of this section: (1) The debtor's aggregate interest, not to exceed ($27,900.00 at the time of filing; $31,575.00 at the time of sale) **in value,** in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ."

Admittedly, the definition of "value" in Section 522(a)(2) appears to refer to the valuation of the asset and not necessarily the value of the exemption; however, it would not make much sense to value the asset at the time it becomes property of the estate but limit the exemption to the date of filing.  Furthermore, the term "value" is repeated in Section 522(d)(1).

To reach the conclusion advocated by the trustee, the court would need to conclude the term "value" as used in Section 522(d)(1) has a different meaning than the term "value" as used in Section 522(a)(2).   Such conclusion would defy logic and common sense.

For the above reasons, in the present matter, Forester should be able to claim the exemptions as they existed at the time of sale of his principal residence.

Dated:  June 26, 2026                              Respectfully submitted,

                                                   KINGBARNES, LLC
                                                   Attorneys for the Debtor, Robert Allan Forester


                                                   _____
                                                   By:  Robert A. Loefflad

-10-